# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRETT W. GRAY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0028

---

Criminal Appeal from the
Belmont County Court, Eastern Division, of Belmont County, Ohio
Case No. 25CRB00214

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Holly M. Simpson*, for Defendant-Appellant

Dated: December 19, 2025

_____

**WAITE, J.**

**{¶1}** Appellant Brett W. Gray was convicted following a bench trial on one misdemeanor count of domestic violence. Appellant argues on appeal that the court should have granted the prosecutor's motion to dismiss the charge just before trial began due to the victim's change of heart. However, the record reflects that the victim wanted the case dismissed because she wanted Appellant's assistance at home, not because the crime did not happen as reported. It was within the discretion of the trial court to deny the motion to dismiss. Appellant also argues that the trial court erred by not accepting a plea agreement to a lesser charge. The record shows there was never an agreement to a plea. Regardless, it would have been within the discretion of the trial court to reject any such agreement. Appellant finally argues that his conviction was against the sufficiency and manifest weight of the evidence. This record reveals that Appellant violently entered the victim's home, refused multiple orders to leave, and injured the victim when he pinned her behind the refrigerator door while she screamed in pain. None of Appellant's assignments of error have merit, and the judgment of the trial court is affirmed.

Facts and Procedural History

**{¶2}** On April 14, 2025 Appellant was charged in Belmont County Court, Eastern Division, with one count of domestic violence pursuant to R.C. 2919.25(A), (D)(2), a first degree misdemeanor. The charge stemmed from an incident on April 11, 2025 at the home of Appellant's girlfriend in Powhatan, Ohio. At pretrial, the parties made a joint request for Appellant to be evaluated for substance abuse. Appellant was evaluated and approved for admission to a substance use disorder program. At a May 22, 2025 hearing, the parties advised the court that Appellant had entered the program and was receiving

treatment.  The judge was asked if he would consider allowing Appellant to enter a plea to a charge of persistent disorderly conduct, a fourth degree misdemeanor.  No other particulars which would have been in a plea agreement were presented to the court.  The judge stated that he would not be inclined to accept such a plea, because a pending fourth degree misdemeanor would not provide enough of an incentive for Appellant to remain in the treatment program.  The judge then asked Appellant's counsel if he wanted the case set for trial or sought another pretrial, and counsel asked the judge to set the matter for trial.  Trial was scheduled for June 12, 2025.

**{¶3}**  On May 27, 2025, the prosecutor filed a motion to revoke bond after Appellant left the treatment program.  Appellant was later arrested in West Virginia.  On June 3, 2025, Appellant appeared before the court on the bond revocation motion.  As Appellant left his treatment program against medical advice, and one of the conditions of bond was that Appellant comply with the recommendations of the treatment center, the court found that Appellant did not abide by the terms of his bond, and bond was revoked.

**{¶4}**  On June 12, 2025, the parties appeared for a bench trial.  At the outset, the prosecutor made an oral motion to dismiss based on the victim's misgivings about going forward.  The judge allowed the victim to explain why she did not want trial to go forward. She said that she was receiving cancer treatment and was finding it difficult to live on her own.  She sought Appellant's help at home, including for him to contribute to her living expenses. The judge overruled the prosecutor's motion to dismiss the case.  Appellant's counsel then proposed that Appellant be permitted to plead to a charge of persistent disorderly conduct, a fourth degree misdemeanor.  The judge again stated that he was not inclined to accept such a plea for the reasons stated previously:  the lesser charge

would not provide enough incentive for Appellant to follow through with necessary substance abuse treatment. The record reflects that while the parties then discussed the possibility of a plea agreement, no plea agreement was reached or presented to the court. In these discussions, the prosecutor stated: "If there was a plea . . . we would ask that there not be a no contact order." (6/12/25 Tr., p. 6.) Appellant's counsel stated: "I don't think I can plead to domestic violence." (6/12/25 Tr., p. 6.) As it was apparent the parties could not agree to a plea, the court asked the prosecutor to call his first witness.

{¶5} The first witness was the arresting officer, Belmont County Sheriff's Deputy Shamus Nixon. Dep. Nixon testified that he received a dispatch call on April 11, 2025 to respond to the victim's 911 call that she had been pushed and assaulted by her boyfriend in her home in Powhatan. Appellant had left the victim's residence by the time Dep. Nixon arrived. Dep. Nixon observed damage to the rear entry door consistent with the door being kicked open. He noted that there was a crack in the door frame where the deadbolt would be, that the doorknob was damaged, and that there were muddy footprints on the bottom exterior of the door as if someone had kicked it open. When he interviewed the victim, she showed him a cell phone video that recorded some of the circumstances of the assault. The victim said that she told Appellant not to enter the house, and he refused to leave when she repeatedly demanded it. She told Dep. Nixon that Appellant used the refrigerator door to pin her against the wall and she was bruised from the incident. Dep. Nixon observed a bruise on the victim's leg. He noted that the living room was in disarray. Appellant was later arrested and charged with domestic violence.

{¶6} The victim testified that she and Appellant had been living together for a few months. She called 911 on April 11, 2025 because she was afraid of Appellant and was

made nervous by his behavior. She believed he was under the influence of drugs. When he arrived at her house, she tried to stop him from entering. When Appellant kicked at the door, she told him to stop and that she would call the police. She eventually unlocked the door in an attempt to calm him down. However, once he gained entrance Appellant acted arrogantly, and spat food in her face. At this point, she told him to leave and take his belongings with him. Instead, Appellant followed her into the kitchen and forced her against the wall next to the refrigerator. She told him not to push her, as he was using the refrigerator door to pin her to the wall. She said the Appellant hurt her and that she had bruises from being pushed to the wall by the refrigerator door.

{¶7}  The video the victim recorded on her cell phone was played for the judge during the victim's testimony and was entered into evidence. It showed the kitchen door being repeatedly kicked and Appellant walking into the house. There was audio of the victim yelling at Appellant to leave the house and that he was not welcome there. The video shows the victim standing in the kitchen telling Appellant to leave and then shows Appellant entering the kitchen. Appellant walked to the refrigerator while the victim backed up between the wall and the refrigerator. Appellant opened the refrigerator door, pinning the victim behind it. The victim screamed that he was hurting her by pushing her against the wall.

{¶8}  Appellant testified at trial. He admitted that he was using drugs, specifically methamphetamine. He admitted that he was pushing against the open refrigerator door with the victim behind it, and acknowledged she was screaming that he was hurting her. He admitted he was emotional, that he mocked the victim, and that he coughed up food and spat it at the victim, but he did not believe it hit her in the face. Appellant admitted

that the victim told him to get out of the house multiple times. He said he had decided that he was not going to leave until he ate something, because he was hungry. He admitted that he opened the refrigerator door, got food out, and then sat in a chair and taunted the victim. Appellant did not specifically remember kicking in the front door, but he did not deny it. Appellant stated the house belonged to his boss, but that the victim was the lessee, and that his name was not on the lease. He admitted he simply ignored the victim's repeated pleas for him to leave the house.

{¶9} The court found Appellant guilty of domestic violence. He was sentenced to 180 days in jail, 90 days suspended, and was given 27 days for time served. He was put on probation for five years, ordered to have no unwanted contact with the victim, and ordered to abstain from alcohol, marijuana, or illegal drugs. The final judgment entry was filed on June 12, 2025. Appellant filed this timely appeal on June 30, 2025.

### ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN DENYING THE PROPOSED PLEA AGREEMENT AND REFUSING TO DISMISS THE CASE UPON REQUEST OF THE STATE.

{¶10} Appellant raises two separate arguments under this assignment of error. First, he argues that the court should have granted the state's oral motion to dismiss the charges immediately prior to the start of the bench trial. However, "[a] trial court's decision to grant or deny a prosecutor's request to dismiss a charge is reviewed for an abuse of discretion." *State v. Daniels*, 2018-Ohio-1701, ¶ 16 (1st Dist.). Second, he argues that the trial court should have accepted a plea to the lesser charge of persistent disorderly

conduct. Again, "[t]he decision whether to accept or to reject a plea bargain rests within the sound discretion of the trial court." *State v. Asberry*, 2007-Ohio-5436, ¶ 40 (8th Dist.). "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 2013-Ohio-2951, ¶ 21 (7th Dist.).

{¶11} At the start of the bench trial on June 12, 2025, the prosecutor told the court that he sought to dismiss the charge because the victim's story had changed somewhat from what she initially told the police. The prosecutor then asked if the victim could explain herself to the judge, and the judge agreed. After giving her statement and engaging in a dialogue with judge, the judge determined that the victim had not changed her story. She simply wanted the case dismissed so that Appellant could help her at home and contribute to her living expenses. She explained that she was undergoing cancer treatments and needed assistance from Appellant. The judge disagreed with the prosecutor's rationale for dismissing the charge, and the oral motion to dismiss was overruled.

{¶12} Crim.R. 48(A) allows the state to dismiss charges with leave of the court. R.C. 2941.33 provides: "The prosecuting attorney shall not enter a nolle prosequi in any cause without leave of the court, on good cause shown, in open court. A nolle prosequi entered contrary to this section is invalid." A motion for dismissal based on good cause and done in open court should generally be granted. *State v. DaRe*, 2017-Ohio-7585, ¶ 14 (7th Dist.). Good cause is determined on a case-by-case basis. *State v. Ramos*, 2022-Ohio-886, ¶ 37 (3d Dist.). Nevertheless, as stated earlier, our standard of review of the court's decision is abuse of discretion.

Case No. 25 BE 0028

{¶13} The prosecutor's stated reason for requesting dismissal of the case was that the victim allegedly intended to give testimony that contradicted her earlier statements, but in her dialogue with the court the victim did not say she intended to change her story. She simply stated that she wanted Appellant to come back home and help with expenses. She admitted to the judge: "I know what he's done is not correct . . . I was in fear. I had to call but this has been two months now." (6/12/25 Tr., p. 4.) Hence, the court did not believe the victim intended to change her testimony. It was within the judge's discretion to determine that there was no good cause for dismissing the charge.

{¶14} Regarding the judge's so-called refusal to accept a plea agreement, the record is clear that there was never any agreement as to a plea. The record contains two moments when the possibility of a plea was discussed. These included a suggestion that Appellant desired a reduction of his charge to a fourth-degree misdemeanor count of persistent disorderly conduct. At no point, however, do the parties reach a complete plea agreement, nor is such agreement described or presented to the judge. A judge cannot reject a plea that was never before the court.

{¶15} Appellant appears to contend the judge should at least have accepted the proposed concept of a plea to a lesser charge, even if the details of the agreement were not worked out. Appellant overlooks the fact that a plea agreement is a contract between the defendant and the state. *State v. Staten*, 2005-Ohio-1350, ¶ 31 (7th Dist.). As with any contract, until there has been an offer and an acceptance, there is no contract. *State v. Dixon*, 2025-Ohio-326, ¶ 9 (3d Dist.). At no point does the prosecutor agree to a plea. In fact, the prosecutor states at the beginning of trial: "If there was a plea . . . we would ask that there not be a no contact order." (6/12/25 Tr., p. 6.) To say "if there was a plea"

clearly indicates one does not exist. The state and Appellant were simply engaged in negotiations, and not very extensive negotiations. Appellant's contention that there was some plea agreement reached in this case is simply incorrect.

{¶16} Even if there had been an agreement, the court's stated basis for being unwilling to accept a plea to a lesser charge is rational and reasonable. Abuse of discretion only occurs when there is no rational basis for a judge's decision. *State v. Reynolds*, 2004-Ohio-3692, ¶ 10 (10th Dist.). "[T]he final judgment on whether a plea bargain shall be accepted must rest with the trial judge." *State v. Darnell*, 2003-Ohio-2775, ¶ 9 (4th Dist.), quoting *City of Akron v. Ragsdale*, 61 Ohio App.2d 107 (9th Dist. 1978). The court reasoned that a plea to a lesser charge would not provide enough incentive for Appellant to continue with a drug treatment program and remain drug and alcohol free. The fact that Appellant failed to abide by the terms of his treatment program, even with a looming first-degree misdemeanor charge, proved that the trial court's analysis of the situation was correct. If the court was left only with the much less severe penalties for a fourth-degree misdemeanor, it would have far less leverage to provide incentives for Appellant to remain free of drugs and alcohol. Not only was the court's assessment of the situation in this case rational and reasonable, it was also absolutely correct. As part of Appellant's sentence, the judge used the power of probation and 90 days of suspended sentence to encourage Appellant to continue to abstain from using drugs and alcohol. If Appellant violated the terms of probation, the remaining 90 days would be imposed. The judge would not have had this option with a fourth-degree misdemeanor, where the total sentence that can be imposed is only 30 days.

**{¶17}** As there was no plea agreement in this matter, and the court gave a reasonable explanation for his desire not to consider a plea that would involve a lesser charge, there was no abuse of discretion in this matter.

**{¶18}** Both of Appellant's arguments under this assignment of error are unpersuasive and are overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN CONVICTING DEFENDANT OF DOMESTIC VIOLENCE WHEN THE CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE AND THE TRIAL COURT AFFORDED TOO MUCH WEIGHT TO EVIDENCE PRESENTED.

**{¶19}** Appellant contends that neither the sufficiency nor the manifest weight of the evidence supported his convictions. Sufficiency of the evidence and manifest weight of the evidence are related, but distinct, legal concepts. "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 2010-Ohio-617, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 2009-Ohio-1023, ¶ 14 (7th Dist.), citing *State v. Robinson*, 162 Ohio St. 486 (1955). When reviewing a conviction for sufficiency of the evidence, an appellate court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 2015-Ohio-1882, ¶ 14 (7th Dist.).

<u>Case No. 25 BE 0028</u>

**{¶20}** In reviewing the sufficiency of the evidence, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). A conviction cannot be reversed on the grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *State v. Mock*, 2010-Ohio-2747, ¶ 41 (7th Dist.).

**{¶21}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *Thompkins* at 387. It is not a question of mathematics, but depends on the overall effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390. (Cook, J. concurring). An appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury (or in this case, the judge acting as the trier of fact in a bench trial) clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387. This discretionary power of an appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶22}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by

observing their gestures, voice inflections, and demeanor." *State v. Vaughn*, 2022-Ohio-3615, ¶ 16 (7th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶23} Appellant was charged with a single count of domestic violence pursuant to R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family member or household member." Appellant does not dispute that he and the victim were living together in the same household. He does not dispute that he refused to leave after repeated pleas from the victim. He does not dispute that he pushed the refrigerator door against the wall with the victim behind it and that she was screaming in pain. Appellant only disputes that he intended to "knowingly cause or attempt to cause physical harm." "A person acts knowingly, regardless of purpose, when the person is aware that his conduct will probably cause a certain result. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *State v. Holladay*, 2020-Ohio-5459, ¶ 31 (7th Dist.); R.C. 2901.22(B). The culpable mental state of "knowingly" rests in a person's mind and must be ascertained by an examination of all the surrounding facts and circumstances. *State v. Chamberlain*, 2020-Ohio-3583, ¶ 15 (7th Dist.).

{¶24} Appellant's aggressiveness is evident throughout the record. He tried to kick in the door to the victim's house. Appellant forced his way into the house knowing he was not wanted there, and he was repeatedly told to leave. He spat food into the victim's face. The victim described him as arrogant and cocky. He admitted taunting her after he slammed the refrigerator door into her. The victim's injury occurred as a result of Appellant's aggressive act of pushing her against the wall with the refrigerator door.

Appellant admits that he pushed her against the wall with the refrigerator door and that she screamed in pain because of his action, and the video supports this contention.

{¶25} The victim, who did not want Appellant in the house, also did not want him to use the refrigerator, so she tried to block the door. All the evidence shows that Appellant was going to open that door regardless of what the victim did or said. The video shows that it was not an accidental or merely careless action that caused the victim harm, and Appellant's own testimony makes it clear that he opened the door intentionally, knowing the victim was behind it. The victim was thrown back against the wall. The victim screamed that she was getting hurt. The record shows that she sustained a bruise from the assault. Appellant arrogantly insisted that he was going to eat, ignored all of the victim's demands that he leave, and taunted her after he hurt her. The trial judge, acting as the trier of fact, could reasonably interpret this evidence as proof that Appellant acted knowingly in causing harm to the victim. Although Appellant does not discuss the physical harm element of the crime, the record also supports that the victim was physically harmed by Appellant's actions.

{¶26} This verdict is based on sufficient evidence and is supported by the manifest weight of the evidence. Appellant's second assignment of error is overruled.

Conclusion

{¶27} Appellant raises two assignments of error and four overall arguments in this appeal. Appellant argues the prosecutor's motion to dismiss, raised just before the bench trial started, should have been granted. The prosecutor believed that the victim's change of heart about proceeding with trial warranted dismissal. The record shows that the victim was not going to change her version of the events or contradict earlier statements she

Case No. 25 BE 0028

made, but simply wanted Appellant to live with her again and help her while she was recovering from cancer treatments. It was within the discretion of the trial court to deny the motion to dismiss, and there is no error. Appellant also argues that the trial court erred by not accepting a plea agreement to a lesser charge. There was never a plea agreement in this matter, so there can be no error, here. Appellant further argues that his conviction was against the sufficiency and manifest weight of the evidence. The only element of the crime of domestic violence Appellant disputes is whether he knowingly committed the crime. The mental state of "knowingly" can be found from the full circumstances of the crime as contained in the record. Appellant violently entered the victim's home, refused multiple orders to leave the home, mocked and taunted her, and pinned her behind the refrigerator door while she was screaming in pain. The record supports both the sufficiency and the manifest weight of the evidence. Appellant's assignments of error have no merit, and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

Case No. 25 BE 0028

———————————————

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Belmont County Court, Eastern Division, of Belmont County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**